Peter E. Nussbaum, Esq.
Abigail J. Remore, Esq.
Neha V. Bhalani, Esq.
Chiesa Shahinian & Giantomasi PC
ONE BOLAND DRIVE
WEST ORANGE, NJ  07052
Telephone: 973.325.1500
Facsimile: 973.325.1501
Email: pnussbaum@csglaw.com
Email: ajremore@csglaw.com
Email: nbhalani@csglaw.com
*Attorneys for Plaintiff James DeWulf*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JAMES DEWULF., <br><br> Plaintiff, <br><br> vs. <br><br> BLATT BILLIARD CORP. and JANE DOES 1-10 and XYZ CORPORATIONS 1-10, <br><br> Defendants. | Civil Action No.: <br><br> *Document Electronically Filed* <br><br> **COMPLAINT AND DEMAND FOR A JURY TRIAL** |

Plaintiff, James DeWulf (hereinafter "Plaintiff" or "DeWulf") by and through his undersigned attorneys, for his Complaint against the defendant Blatt Billiard Corp. (hereinafter "Defendant" or "Blatt") and John and Jane Does 1-10 and XYZ Corporations 1-10 (together with Blatt, collectively "Defendants"), allege as follows:

### NATURE OF ACTION

1. This is an action for trade dress infringement, unfair competition and other relief arising under the trademark and service mark laws of the United States, specifically 15 U.S.C. § 1051 et seq. (hereinafter "Lanham Act') and the common law of the State of New Jersey. Defendants have willfully and blatantly misappropriated Plaintiff's trade dress in an effort to trade off the goodwill associated with such trade dress.

## THE PARTIES

2. Plaintiff DeWulf is an individual with a business address at 3307 Exposition Place, Los Angeles, California 90018.

3. Upon information and belief, Defendant Blatt Billiard Corp. is a corporation organized and existing under the laws of the state of New York with a principal place of business located at 350 South Main Street, Wood-Ridge, New Jersey 07075.

4. Defendant's products are available for sale throughout this judicial district and can be purchased and shipped to customers in this judicial district.

## JURISDICTION, VENUE AND STANDING

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338 because Plaintiff's claims arise under the trademark and trade dress laws of the United States. This Court also has supplemental jurisdiction over Plaintiff's claims that arise under the laws of the State of New Jersey pursuant to 28 U.S.C. §§ 1338(b) and 1367.

6. This Court has personal jurisdiction over the parties to this action because (i) Plaintiff's claims arise in this judicial district, and (ii) each party does business in this judicial district.

7. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because each party does business in this judicial district, witnesses and evidence are located within this judicial district, and the acts complained of herein have taken place in this judicial district.

8. Plaintiff has standing to bring this action pursuant to 15 U.S.C. § 1125(a)(1) and the statutory and common laws of the State of New Jersey.

## FACTUAL ALLEGATIONS

### A. PLAINTIFF'S DISTINCTIVE NON-FUNCTIONAL TRADE DRESS

9. Plaintiff is a well-known artist and designer of gaming tables, furniture, countertops, sinks, lighting and other home design fixtures featuring a modern and minimalistic design aesthetic.

10. Plaintiff began his design career in 2004, and on or about January, 2005 he established DeWulf Concrete, a boutique design firm servicing architects, interior decorators, commercial retail outlets, and residential clients.

11. Plaintiff rose to particular critical acclaim in 2011 after creating and launching his line of gaming tables which includes billiards tables, table tennis tables and shuffleboard tables ("Plaintiff's Gaming Tables") and has since become known for his cutting-edge and avant-garde designs.

12. Plaintiff's Gaming Tables may be purchased at select retail locations and through Plaintiff's website.

13. Plaintiff's Gaming Tables bear Plaintiff's unique, arbitrary, distinctive and non-functional trade dress (the "DeWulf Trade Dress").

14. The unique, arbitrary, distinctive and non-functional DeWulf Trade Dress featured on the Gaming Tables is comprised of a base consisting of two open, rectangular box shaped legs which are placed such that the tops and bottoms of the base are parallel lengthwise to the width of the tabletop of the Gaming Table. The top ends of the base are intersected perpendicularly by two parallel ski shaped support beams running the length of the Gaming Table. The tabletop of the Gaming Table is placed on top of the skis lengthwise. The overall appearance of the DeWulf Trade Dress combines sculptural yet industrial clean lines with airy negative space in a unique manner that had never been seen before on gaming tables, as gaming tables typically feature either four corner legs or a central large and weighty base.

15. An example of one of Plaintiff's Gaming Tables featuring the DeWulf Trade Dress, namely one of Plaintiff's billiard tables first launched in 2011, is depicted below:

16. On May 22, 2022, Plaintiff filed the following U.S. Trademark Application with the U.S. Patent and Trademark Office for his distinctive trade dress:

| Trade Dress | Serial No. | Goods |
|---|---|---|
|  | 97/428,793 | Class 28: Billiard tables; Table tennis tables; Tables for table shuffleboard. |

A printout from the U.S. Patent and Trademark Office trademark electronic search system ("TESS") records for the aforementioned application is attached hereto as **Exhibit A**.

17. The overall design of the DeWulf Trade Dress has a minimalistic aesthetic that is unique and that allows Plaintiff's Gaming Tables to stand out from his competitors. The unique, arbitrary, distinctive and non-functional trade dress featured on Plaintiff's Gaming Tables is a

4

deviation from designs found on other gaming tables, which typically include four corner legs or a central heavy base, and more ornate design elements. Sample images of other gaming tables offered by Plaintiff's competitors are attached hereto as **Exhibit B.**

18. The arrangement and combination of all the aforementioned elements comprising the DeWulf Trade Dress is unique, arbitrary, distinctive and non-functional, has acquired secondary meaning as an indicator of source of Plaintiff's Gaming Tables and constitutes valid and protectable trade dress.

19. While Plaintiff's choice of concrete as a medium for his goods is meant to be long lasting and weather resistant, the actual design comprising the DeWulf Trade Dress is non-functional, as (1) it does not yield any utilitarian advantage to Plaintiff; (2) there are innumerable alternative designs available for gaming tables, as evidenced by the designs depicted in **Exhibit B**; (3) Plaintiff's advertisement materials do not promote any utilitarian advantages of the design, as there are none; and (4) the DeWulf Trade Dress does not result from a simpler or less expensive method of manufacture conferring any competitive advantage on to Plaintiff. Indeed, Plaintiff's artisanal method of manufacture is more expensive and time consuming than that of standard gaming tables.

20. The DeWulf Trade Dress has been in continuous use by Plaintiff since 2011.

21. Over the years, Plaintiff has expended substantial time, money, effort and other resources advertising, promoting, developing and marketing the unique, arbitrary, distinctive and non-functional DeWulf Trade Dress and the high-quality goods offered thereunder.

22. Plaintiff markets and promotes Plaintiff's Gaming Tables through his website, social media accounts and at industry design and trade shows such as the International

5

Contemporary Furniture Fair in New York City, New York, Maison et Objet in Paris, France and Design Miami in Miami, Florida.

23. Plaintiff's website, social media accounts and other marketing materials all promote and display photographs featuring the unique, distinctive and non-functional DeWulf Trade Dress. Representative examples of Plaintiff's website, social media accounts and marketing materials are attached hereto as **Exhibit C**.

24. Plaintiff's Gaming Tables have also been featured in dozens of home décor and lifestyle publications such as *Garden Design* (October 2011), *California Home Design* (March 2011), *Ocean Home* (January 2012), *Forbes Life* (December 2011), *Sotheby's International Realty Reside* (May 2012), *Elle Decor* (August 2012), *Ocean Home* (March 2013), *Talk of the Town* (May 2013), *Men's Journal* (October 2014), *Interiors California* (December 2014), *1STDIBS* (June 2021), and *Architectural Digest Italy* (July 2021) . Examples of press DeWulf received for his acclaimed DeWulf Trade Dress are attached hereto at **Exhibit D.**

25. The following has been said about the unique design of the DeWulf Trade Dress:

"…it redefines rec room style." Bryan Anthony, CALIFORNIA HOME AND DESIGN, March 2011;

"Contemporary designer James DeWulf, known for his innovation, goes playful with his latest creation…" SOTHEBY'S INTERNATIONAL REALTY RESIDE, May 2012;

"Fundamental furnishings whose looks are anything by ordinary." OCEAN HOME, March 2013;

"Simple and minimal, it will fit perfectly in a contemporary style man cave…" TALK OF THE TOWN, May 2013;

"For 16 years, DeWulf has used the composite materials to create custom work for an A-list clientele, masterfully blending advanced concrete technology with modern aesthetics. The result: couture furniture that doubles as intellectual art." 1STDIBS, June 2021.

26. As a result of the extensive use of the DeWulf Trade Dress and the substantial advertising, marketing and promotional efforts by Plaintiff, the DeWulf Trade Dress has acquired secondary meaning, substantial consumer recognition and goodwill, as the DeWulf Trade Dress is widely recognized by the public as identifying Plaintiff as the source of Plaintiff's Gaming Tables.

### B. PLAINTIFF'S AND DEFENDANT'S BUSINESS RELATIONSHIP AND DEFENDANT'S SUBSEQUENT INFRINGEMENT

27. Defendant manufactures and sells gaming tables.

28. Subsequent to Plaintiff's five years of exclusive and substantial use and promotion of the DeWulf Trade Dress and subsequent to the DeWulf Trade Dress acquiring secondary meaning as identifying DeWulf as the source of Plaintiff's Gaming Tables and distinguishing Plaintiff's Gaming Tables from those of others, Defendant approached DeWulf at the International Contemporary Furniture Fair in 2016 to enter into a business arrangement to promote and sell Plaintiff's Gaming Tables through Defendant's own website. The parties entered into such an agreement and Defendant began selling Plaintiff's Gaming Tables.

29. Immediately after starting to sell Plaintiff's Gaming Tables and while continuing to sell Plaintiff's Gaming Tables, Defendant adopted and began selling its own line gaming tables featuring a confusingly similar design (the "Copycat Tables") at a much lower cost.

30. Defendant duplicated virtually every single design detail and element which comprises the unique, arbitrary, distinctive and non-functional DeWulf Trade Dress. Specifically, the Copycat Tables incorporate trade dress featuring an identical base made up of two open rectangular box shaped legs and lengthwise parallel skis upon which the tabletops rest.

31. The chart below shows side by side images comparing examples of Plaintiff's Gaming Tables on the left and Defendant's Copycat Tables on the right. The images evidence Defendant's blatant infringement and misappropriation of the DeWulf Trade Dress.

| **Plaintiff's Gaming Tables** | **Copycat Tables** |
|---|---|
| | |
| | |

32. The Copycat Tables so closely resemble Plaintiff's Gaming Tables featuring the DeWulf Trade Dress that Plaintiff has lost out on commercial opportunities to exploit and monetize his brand, as evidenced by the fact that Plaintiff's sales of Plaintiff's Gaming Tables bearing the DeWulf Trade Dress decreased significantly after Defendant launched its line of Copycat Tables.

33. Defendant's continued marketing, promotion and sale of the Copycat Tables is likely to cause consumer confusion, mistake or deception as to the source or origin of Defendant's Copycat Tables as the public is likely to believe that Defendant's goods are sponsored by, approved by, licensed by or otherwise affiliated with or legitimately connected to Plaintiff, which they are not.

34. Defendant's continued marketing, promotion and sale of the Copycat Tables will result in the misappropriation of and the profiting off of the goodwill of Plaintiff, as consumers will be led to believe that the Copycat Tables are one and the same as Plaintiff's Gaming Tables,

particularly since Defendant was previously an authorized seller of Plaintiff's Gaming Tables prior to launching its Copycat Tables.

35. Defendant's promotion, marketing and sale of the Copycat Tables is unlawful, amounts to trade dress infringement and unfair competition, and amounts to misappropriation and profiting off the goodwill of Plaintiff's DeWulf Trade Dress, all of which results in injuries to Plaintiff.

## COUNT I

### FALSE DESIGNATION OF ORIGIN, UNFAIR COMPETITION AND TRADE DRESS INFRINGEMENT UNDER THE LANHAM ACT

36. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1-35 of the Complaint as though fully set forth herein.

37. Defendant's sale and promotion of the Copycat Tables bearing trade dress that is nearly identical to Plaintiff's protectable, unique, arbitrary, distinctive and non-functional DeWulf Trade Dress described above is likely to cause consumer confusion or mistake and/or consumer deception in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

38. Defendant has misappropriated a valuable property right and the goodwill of Plaintiff and has attempted to falsely create confusion and the impression in the mind of consumers that the Copycat Tables are associated with, affiliated with or sponsored or endorsed by Plaintiff, which they are not.

39. Defendant's activities misrepresent the nature, characteristics, or qualities of Defendant's goods.

40. Defendant's activities, as alleged herein, constitute unfair competition, false designation of origin, trade dress infringement, and false description and representation in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

41. Defendant has committed such acts of false designation of origin and false description and representation deliberately, willfully and with full knowledge of Plaintiff's prior development of and rights in its DeWulf Trade Dress.

42. As a result of Defendant's acts of unfair competition, Plaintiff has suffered and will continue to suffer serious and irreparable harm for which there is no adequate remedy at law.

## COUNT II

### COMMON LAW TRADE DRESS INFRINGEMENT AND UNFAIR COMPETITION

43. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1- 42 of the Complaint as though fully set forth herein.

44. Plaintiff owns all rights, title, and interest in its DeWulf Trade Dress as described above, including all common law rights therein.

45. Defendant's aforesaid acts constitute infringement of Plaintiff's rights in its DeWulf Trade Dress and tends to falsely represent that Defendant's Copycat Tables are provided by, sponsored by, approved by, licensed by, affiliated with or in some other way legitimately connected to Plaintiff and are of the same character, nature and quality as the goods provided by Plaintiff, thereby damaging Plaintiff and Plaintiff's reputation.

46. The acts of Defendants complained of hereinabove constitute acts of unfair competition against Plaintiff under the common law of the State of New Jersey, which acts have been committed knowingly and willfully and have injured Plaintiff in its trade and business.

47. By reason of the aforesaid acts, Defendants have caused damage to Plaintiff and to the goodwill associated with Plaintiff's trade dress.

48. Unless enjoined by this Court, Defendant's wrongful acts will continue and Plaintiff will continue to suffer irreparable harm for which it has no adequate remedy at law.

## COUNT III

## UNFAIR COMPETITION UNDER N.J.S.A. § 56:4-1

49. Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1- 48 of the Complaint as though fully set forth herein.

50. Defendant's adoption of and use of confusingly similar trade dress for its Copycat Tables as described above falsely indicates that Defendant is connected with, sponsored, endorsed, authorized, approved by or affiliated with Plaintiff, which it is not.

51. Defendants' adoption of and use of confusingly similar trade dress for its Copycat Tables as described above is likely to cause confusion, mistake or deception as to the source or affiliation of Defendant's goods.

52. Defendant's adoption of and use of confusingly similar trade dress for its Copycat Tables as described above allows Defendant to receive the benefit of Plaintiff's goodwill, which Plaintiff has established at great labor and expense.

53. The acts of Defendant complained of herein constitute unfair competition in violation of the New Jersey Unfair Competition Statute, N.J.S.A. § 56: 4-1, and the common law of the State of New Jersey.

54. The acts of Defendant complained of herein were committed willfully.

55. As a result of Defendant's actions, Defendant is being unjustly enriched and Plaintiff has been harmed in an amount to be determined at trial and will continue to be harmed and will suffer irreparable injury unless Defendants are enjoined from the foregoing actions.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment in its favor and against Defendant as follows:

1. That Defendant, and its principals, officers, agents, servants, distributors, affiliates, employees, attorneys and representatives and all those in privity or acting in concert with the Defendant, and each of them, be permanently enjoined and restrained from, directly or indirectly:

    (a) Using trade dress identical to the DeWulf Trade Dress or any other trade dress confusingly similar thereto, in connection with Defendant's goods;

    (b) Falsely designating the origin, sponsorship, or affiliation of Defendant's goods in any manner;

    (c) Otherwise competing unfairly with Plaintiff in any manner;

    (d) Using any trade dress which creates a likelihood of injury to the business reputation of Plaintiff and the goodwill associated therewith;

    (e) Using any trade practices whatsoever including those complained of herein, which tend to unfairly compete with or injure Plaintiff's business and goodwill pertaining thereto; and

    (f) Continuing to perform in any manner whatsoever any of the acts complained of in this Complaint.

2. That the Defendant be required to pay to Plaintiff compensatory damages for the injuries sustained by Plaintiff in consequence of the unlawful acts alleged herein and that such damages be trebled pursuant to 15 U.S.C. § 1117 because of the willful and unlawful acts as alleged herein.

3. That Defendant be required to pay Plaintiff punitive damages in an amount to be determined at trial.

4. That Defendant be required to account for and pay over to Plaintiff all gains, profits

and advantages derived by Defendant from the unlawful activities alleged herein.

5. That Defendant be required to deliver for destruction all advertisements, promotional flyers, cards, brochures, stationery, promotional materials, packaging, labels and any other written materials which contain Defendant's Copycat Tables together with all plates, molds, matrices and other means and materials for making or reproducing the same.

6. That Defendant be required to remove any and all online depiction of the Copycat Tables, including via any of its websites, social media accounts or otherwise, and that Defendant be required to take steps necessary to remove any use of the infringing trade dress from any third-party website or online source.

7. That Defendant be required to pay to Plaintiff all of its litigation expenses, including but not limited to reasonable attorney's fees and the costs of this action.

8. That Plaintiff be awarded such other and further relief as the Court may deem just and proper.

                                              CHIESA SHAHINIAN & GIANTOMASI PC
*Attorneys for Plaintiff James DeWulf*

                                By:    /s/ *Peter E. Nussbaum*
                                          PETER E. NUSSBAUM

Dated:  August 1, 2022

## JURY DEMAND

Plaintiff demands trial by jury of all claims and defenses in this action so triable.

          CHIESA SHAHINIAN & GIANTOMASI PC
          *Attorneys for Plaintiff James DeWulf*

By:   /s/ *Peter E. Nussbaum*
       PETER E. NUSSBAUM

Dated: August 1, 2022

## LOCAL RULE 11.2 CERTIFICATION

I certify that this matter is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding; no other action, arbitration or administrative proceeding is contemplated to my knowledge; and I know of no other parties who should be joined in this action at this time.

          CHIESA SHAHINIAN & GIANTOMASI PC
          *Attorneys for Plaintiff James DeWulf*

By:   /s/ *Peter E. Nussbaum*
       PETER E. NUSSBAUM

Dated: August 1, 2022