**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| **JAMES DEWULF,**<br><br>        **Plaintiff,**<br><br>**v.**<br><br>**BLATT BILLIARD CORP. and JANE DOES 1-10 and XYZ CORPORATIONS 1-10,**<br><br>        **Defendants.** | Civ. No. 22-04851 (KM) (AME)<br><br>     **OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

This matter comes before the Court on the plaintiff's motion to strike portions of defendant Blatt Billiard Corp.'s answer, pursuant to Fed. R. Civ. P. 12(f), as well as a motion by defendant Blatt Billiard Corp. for judgment on the pleadings, *see* Fed. R. Civ. P. 12(c). For the reasons set forth below, the motion to strike (DE 10) is **GRANTED** in part and **DENIED** in part, and the motion for judgment on the pleadings (DE 13) is **DENIED.**[1]

## I.    Background

The facts alleged in the complaint are as follows. Plaintiff James DeWulf

---

[1]    Certain citations to the record will be abbreviated as follows:

Compl. = DeWulf's complaint (DE 1)
Ans. = Blatt's answer (DE 9)
MTS = DeWulf's memorandum of law in support of his motion to strike portions of Blatt's answer (DE 10-2)
Opp. to MTS = Blatt's memorandum of law in opposition to the motion to strike (DE 11)
MJOP = Blatt's memorandum of law in support of its motion for judgment on the pleadings (DE 13-1)
Opp. to MJOP = DeWulf's memorandum of law in opposition to the motion for judgment on the pleadings (DE 18)

is a well-known artist and designer. (Compl. ¶9.) He rose to particular critical acclaim in 2011 after creating and launching a line of gaming tables, including billiards tables, table tennis tables, and shuffleboard tables. (*Id.* ¶11.)

DeWulf's gaming tables are made of concrete and feature a base consisting of two open, rectangular-box shaped legs that are placed such that the tops and bottoms of the legs are parallel lengthwise to the width of the tabletop. The top ends of the legs are intersected perpendicularly by two parallel-ski shaped support beams running the length of the table, and the tabletop is placed on top of the skis lengthwise. This design is unique to gaming tables, which typically feature either four corner legs or a central large and weighty base. (Compl. ¶¶14, 19.)

DeWulf markets and promotes his gaming tables online through his website and social media accounts, as well as at industry design and trade shows. (Compl. ¶22.) Since 2011, his gaming tables have been featured in dozens of home décor and lifestyle publications. (*Id.* ¶24.)

Defendant Blatt Billiard Corp. ("Blatt") manufactures and sells gaming tables. (Compl. ¶27.) In 2016, Blatt approached DeWulf at the International Contemporary Furniture Fair ("ICCF") about entering into a business arrangement. The parties agreed that Blatt would promote and sell DeWulf's gaming tables through Blatt's website. (*Id.* ¶28.)

Immediately after starting to sell DeWulf's gaming tables, and while continuing to do so, Blatt began selling its own line of gaming tables featuring a similar design to the DeWulf tables, but at a much lower cost. (Compl. ¶29.) Like the DeWulf tables, the Blatt tables feature a design consisting of two open rectangular-box shaped legs and lengthwise parallel skis upon which the tabletop rests. (*Id.* ¶30.) After Blatt launched this line of tables, sales of DeWulf's gaming tables decreased significantly. (*Id.* ¶32.)

On May 22, 2022, DeWulf filed an application with the U.S. Patent and Trademark Office to register his distinctive trade dress. (Compl. ¶16.) On August 1, 2022, DeWulf commenced this action against Blatt for

misappropriation of the DeWulf trade dress. (DE 1.) DeWulf asserts claims under the Lanham Act, *see* 15 U.S.C. § 1125(a), the New Jersey unfair competition statute, *see* N.J. Stat. Ann. § 56:4-1, and New Jersey common law.

On September 13, 2022, Blatt filed its answer to the complaint. (DE 9.) DeWulf responded by filing a motion to strike portions of Blatt's answer on October 10, 2022. (DE 10.) On November 15, 2022, Blatt filed a motion for judgment on the pleadings. (DE 13.) Both motions are fully briefed and ripe for review.

## II.    Discussion

### A. Motion to strike

Federal Rule of Civil Procedure Rule 12(f) provides, in relevant part, that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent or scandalous matter." Fed. R. Civ. P. 12(f). "The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." *Conserve v. City of Orange Twp.*, No. CV 21-872 (SDW)(ESK), 2021 WL 3486906, at *3 (D.N.J. Aug. 9, 2021), *reconsideration denied*, No. CV 21-872 (SDW)(ESK), 2022 WL 1617660 (D.N.J. May 23, 2022) (citation omitted).

Rulings on motions to strike are discretionary. *See Smith v. Hillside Vill.*, No. CV 17-0883 (KM), 2018 WL 588923, at *9 (D.N.J. Jan. 26, 2018). However, because motions to strike often require the court to evaluate legal issues before the factual background of a case has been developed, such motions are generally disfavored. *See United States v. Sensient Colors, Inc.*, 580 F.Supp.2d 369, 374 (D.N.J.2008). "Thus, a motion to strike will not be granted where the sufficiency of a defense depends on disputed issues of fact." *Huertas v. U.S. Dep't of Educ.*, No. CIV.08-3959 RBK/JS, 2009 WL 2132429, at *1 (D.N.J. July 13, 2009). "A court should grant a motion to strike a defense only where the 'insufficiency of the defense is clearly apparent.'" *Id.*, quoting *Sensient*, supra at 374.

Blatt has pled some 100 affirmative defenses, a total far surpassing that of any other answer the Court can recall. DeWulf argues that close to half of these are insufficient, redundant, impertinent and immaterial. (MTS 1-2.) While I tend to agree, it is not expeditious for the Court to evaluate, one by one, the nearly 50 challenged affirmative defenses, nor is it necessary.

I will, however, address DeWulf's arguments in support of his motion to strike paragraphs 10 and 33 of Blatt's answer, along with affirmative defense 99, which relates to paragraph 33, which at least seem to pose issues that might streamline litigation.

DeWulf argues that the allegations set forth in paragraph 10 of Blatt's answer, which concern the entity DeWulf Concrete, Inc., are immaterial, as DeWulf Concrete, Inc. is not a party to the action. (MTS 25.) But in paragraph 10 of the complaint, DeWulf asserts that he "established Dewulf Concrete, a boutique design firm," in or about January 2005. (Compl. ¶10.) Blatt's allegations are therefore not entirely irrelevant, and I will not strike them from the answer.

In paragraph 33, Blatt "denies doing anything to cause consumer confusion, mistake or deception as to the source" of its tables and "denies the public is likely to believe" that its goods are legitimately connected to DeWulf. (Ans. ¶33.) Also included in paragraph 33 is what Blatt deems to be a "party admission"—an alleged email sent by DeWulf to Blatt on May 5, 2022. In the email, DeWulf states that he "understand[s] [Blatt's] perspective on these simple looking designs not being unique. But they were." (*Id.*) He then explains the work that went into designing his tables and asserts that "[p]rior to 2013 there was not a similar table on the market." (*Id.*) Further along in the email, DeWulf proposes that he and Blatt "reaffirm [their] working relationship and work together on this." (*Id.*) DeWulf offers to let Blatt make and sell its tables so long as DeWulf is given design credit, and to put Blatt on DeWulf's website and send clients to Blatt's showrooms. (*Id.*)

In Blatt's 99th affirmative defense, Blatt quotes portions of the DeWulf email set forth in paragraph 33. Blatt asserts that DeWulf cannot claim

4

secondary meaning or inherent distinctness because DeWulf has admitted that he can "understand" Blatt's perspective that the design of the DeWulf gaming tables is not unique. (Ans. Affirmative Defense 99.) This account omits the sentence immediately following, in which DeWulf states that, despite appearances, the design *is* unique.[2] This reference is not the knockout punch that Blatt represents it to be; at least it is not so dispositive as to merit being struck from the pleadings. Accordingly, I will deny the motion to strike paragraph 33 and affirmative defense 99 from Blatt's answer. I will otherwise deny the motion to strike.

These two examples are emblematic of the fruitless task and waste of judicial resources that would be entailed in ruling on each of the 100 affirmative defenses, or even half of them. Such preliminary skirmishes over pleading matters are contrary to the spirit of the federal rules. To be sure, the defendant's approach to pleading appears excessive. Nevertheless, "defenses

---

[2]     A further question arises as to whether such statements would ultimately be admissible in evidence. Federal Rule of Evidence 408 prohibits the use of evidence of conduct or statements made during settlement negotiations when offered to prove, among other things, the invalidity of a claim. Fed. R. Evid. 408(a). That DeWulf sent the email prior to the formal commencement of a lawsuit does not render the email outside the scope of Rule 408. "There need not be ongoing or even threatened litigation for discussions to qualify as settlement negotiations," and Rule 408 can apply where the dispute is merely "a difference of opinion." *Ciolli v. Iravani*, 625 F. Supp. 2d 276, 286 (E.D. Pa. 2009) (citing *Affiliated Mfrs., Inc. v. Aluminum Co. of Am.*, 56 F.3d 521, 527 (3d Cir. 1995)).

DeWulf argues that Blatt cannot introduce settlement-related statements contained in the May 5, 2022, email to prove the invalidity of DeWulf's claims, and that the email is therefore irrelevant to the current proceedings and should be struck. (MTS 8-9.) Blatt argues, in response, that the email is admissible to show the course of dealings between Blatt and DeWulf and to show DeWulf's bad faith.

Blatt is correct that statements made during settlement negotiations may be admissible to show bad faith or a course of dealing. *See* Fed. R. Evid. 408(b) (permitting the use of evidence of conduct or statements made during settlement negotiations for purposes other than proving or disproving the validity or amount of a disputed claim or impeaching by a prior inconsistent statement or a contradiction). But paragraph 33 and affirmative defense 99 make no reference to bad faith or the parties' course of dealings; to the contrary, they quote the May 5, 2022, email as evidence that DeWulf's claims have no merit.

I will not, however, rule on the admissibility of individual pieces of evidence at this preliminary stage.

(which need not meet *Twombly/Iqbal* pleading standards) are commonly pled with an eye to avoiding a claim of waiver later on." *Smith*, 2018 WL 588923, at *9. "The issues will be refined and framed as the matter proceeds through discovery, to a potential motion for summary judgment, and certainly in the process of developing a pretrial order." *Id.* "It is therefore not the practice of this Court to tarry unnecessarily over matters of pleading." *Id.*

I will deny DeWulf's request for costs and attorney's fees. Although a defendant may be subject to sanctions under Fed. R. Civ. P. 11 for asserting frivolous pleadings or defenses, such sanctions should only be issued in exceptional circumstances. *See Innovative Sports, Mgmt., Inc. v. Neto*, No. CIV.A. 13-1497 SRC, 2013 WL 5935982, at *2–3 (D.N.J. Nov. 1, 2013). The mere presence of defenses in a pleading do not warrant the issuance of sanctions. *See id.* (granting motion to strike but denying request for costs and fees because defendants' conduct did "not reach the level of unreasonableness necessary for sanctions"). Should the defendant, in the course of litigation, persist in pursuing irrelevant or meritless issues, a different result might be called for.

### B. Motion for judgment on the pleadings

Federal Rule of Civil Procedure 12(c) provides for judgment on the pleadings after the pleadings have been closed. A motion for judgment on the pleadings will be granted "if, on the basis of the pleadings, the movant is entitled to judgment as a matter of law. The court will accept the complaint's well-pleaded allegations as true, and construe the complaint in the light most favorable to the nonmoving party, but will not accept unsupported conclusory statements." *DiCarlo v. St. Mary Hosp.*, 530 F.3d 255, 262-263 (3d Cir. 2008) (internal citations omitted). For present purposes, the standards governing a Rule 12(c) motion and a Rule 12(b)(6) motion are similar. *See Spruill v. Gillis*, 372 F.3d 218, 223 n.2 (3d Cir. 2004).

Blatt argues that it is entitled to judgment on the pleadings on all of DeWulf's claims because they are facially time-barred. (MJOP 1-2.) In support

of this argument, Blatt points to a demand letter sent to Blatt by DeWulf's counsel, Peter Nussbaum, on June 8, 2022. (Opp. to MTS, Ex. 1, "Demand Ltr.") In the letter, Nussbaum accuses Blatt of falsely suggesting in its social media posts and advertisements that it is the originator of the design of its gaming tables. (Demand Ltr. 3.) Attached as an exhibit to the letter is what Nussbaum refers to as "exemplative [s]creenshots of [Blatt's] social media posts and advertisement materials making such false claims." (*Id.*)

One exemplative screenshot included in the demand letter is of an Instagram post by Blatt Billiards from March 20, 2016. (Demand Ltr. Ex. C.) The post consists of an image of a gaming table that resembles the DeWulf gaming tables in design, and the caption states, "Our newest design, 'The Fifth Avenue' #pooltable by #BlattBilliards.'" (*Id.*) According to Blatt, the screenshot demonstrates that DeWulf is aware that Blatt's alleged infringement dates back to March 2016, which is before DeWulf and Blatt met at the ICCF. (MJOP 5-6.) Blatt argues that a six-year statute of limitations applies to all three of DeWulf's claims, and that because DeWulf filed his complaint more than six years after March 2016, the claims are time-barred. (*Id.* 14-15.)

I begin with Count 1 of the complaint, which asserts a claim under the Lanham Act. (Compl. ¶¶36-42.) "The Lanham Act does not contain a statute of limitations and instead subjects all claims to 'the principles of equity,' such as laches." *Kars 4 Kids Inc. v. Am. Can!*, 8 F.4th 209, 220 (3d Cir. 2021) (citing *Santana Prods., Inc. v. Bobrick Washroom Equip., Inc.,* 401 F.3d 123, 135 (3d Cir. 2005)). To determine whether laches bars a claim, the Court considers "two elements: (1) the plaintiff's 'inexcusable delay in bringing suit,' and (2) 'prejudice to the defendant as a result of the delay.'" *Kars 4 Kids, supra* (quoting *Santana, supra,* at 138).

"'Inexcusable delay' for purposes of laches is measured by looking to 'the most analogous' state statute of limitations, which, in the case of trademark infringement, is New Jersey's six-year fraud statute." *New Reflections Plastic Surgery, LLC v. Reflections Ctr. for Skin & Body*, PC, No. CV168523FLWTJB,

2018 WL 6716105, at *6 (D.N.J. Dec. 20, 2018) (quoting *D'Agostino v. Appliances Buy Phone, Inc.*, 633 Fed. Appx. 88, 91 n.3 (3d Cir. 2015)). *See also Kars 4 Kids*, 8 F.4th 209, at 221 (claims under the Lanham Act are properly analogized to New Jersey's six-year fraud statute). If the relevant limitations period—here, six years—has expired, "then the defendant 'enjoys the benefit of a presumption of inexcusable delay and prejudice,' and the plaintiff 'carrie[s] the burden of proving that its delay was excusable and that [the delay] did not prejudice [the defendant].'" *Kars 4 Kids*, *supra* (quoting *Santana*, 401 F.3d at 138-39).

Importantly, the plaintiff's delay in filing suit is measured from the time that the plaintiff knows or should know that the defendant's conduct constitutes trademark infringement. *Kars 4 Kids*, 8 F.4th at 221. In other words, "[t]he laches clock begins to run when the trademark owner knew or should have known, not simply that the infringer was using the potentially offending mark, but that it had a provable infringement claim against the infringer.'" *Id.* (quoting *Excelled Sheepskin & Leather Coat Corp. v. Or. Brewing Co.*, 897 F.3d 413, 419 (2d Cir. 2018)). "The 'should have known' date, sometimes referred to as the 'constructive notice' date, occurs when the plaintiff receives some information that would cause a reasonable person to inquire into the situation further." *New Reflections*, 2018 WL 6716105, at *6 (Citing *Symbol Techs., Inc. v. Proxim Inc.*, No. 01-801, 2004 WL 1770290, at *3 (D. Del. July 28, 2004)).

In evaluating whether laches bars a claim, the court must undertake "'a close scrutiny of the particular facts and balancing of the respective interests and equities of the parties, as well as of the general public.'" *Country Floors, Inc. v. P'ship Composed of Gepner & Ford*, 930 F.2d 1056, 1066 (3d Cir. 1991) (quoting 2 J. McCarthy *Trademarks and Unfair Competition* 573 (2d ed. 1984)). This type of inquiry "usually requires the kind of record only created by [a] full trial on the merits." *Country Floors*, *supra.* Thus, "when the defense of laches depends on disputed facts, it is inappropriate to make a determination on a

motion to dismiss." *Kaufhold v. Caiafa*, 872 F. Supp. 2d 374, 380 (D.N.J. 2012) (citing *Compagnie Des Bauxites de Guinee v. L'Union Atlantique S.A. d'Assurances*, 723 F.2d 357, 363 (3d Cir. 1983)). Judges will grant motions to dismiss for laches only where the defense is clear on the face of the complaint, and "it is clear that the plaintiff can prove no set of facts to avoid the insuperable bar." *Kaufhold*, *supra* (quotation omitted).

The relevant question, then, is whether the complaint, construed in the light most favorable to DeWulf, establishes that DeWulf knew or should have known of Blatt's infringing activity prior to August 1, 2016—six years before DeWulf filed his complaint. I conclude that it does not. The complaint states that Blatt began selling its allegedly infringing tables "immediately" after Blatt began selling DeWulf's gaming tables, which was sometime after the two met in 2016 at the ICCF. (Compl. ¶¶28-29.) Not only does the complaint lack specificity as to when Blatt's alleged infringement began, it does not answer the more critical question of when DeWulf became aware of Blatt's alleged infringement, or, alternatively, when he should have known about the infringement. Additional facts might demonstrate that DeWulf should have known about the infringement right when it began, by virtue of the fact that the parties had previously entered into a business arrangement, but the mere fact of the business arrangement, without more, does not establish whether and when DeWulf had constructive notice.

The screenshot of Blatt's March 2016 Instagram post is outside the scope of the pleadings, but even assuming that I can consider it for purposes of the present motion, all that it shows is that Blatt was already engaging in allegedly infringing activity in March 2016. It does not show that DeWulf was aware of this activity in March 2016, as there is no evidence that DeWulf viewed the Instagram post prior to June 6, 2022, when the screenshot was evidently taken. (Demand Ltr. Ex. C.) True, the complaint states that DeWulf currently uses social media to promote his designs. But the complaint does not establish when DeWulf first began using social media, whether he has an Instagram account, and other factual issues that would demonstrate whether he should

9

have seen the March 2016 post prior to August 1, 2016. In arguing for judgment on the pleadings based on this evidence, Blatt asks the Court to construe the disputed facts in its favor, which I may not do.

At bottom, the factual record is far too undeveloped to conclusively determine whether there was an inexcusable delay in the filing of the complaint. While it is possible that Blatt will prevail on its defense of laches, a ruling at this juncture would be premature. I will therefore deny the motion for judgment on the pleadings as to the Lanham Act claim. *See New Reflections*, 2018 WL 6716105, at *6 (denying laches defense on summary judgment motion because genuine factual disputes exist regarding constructive notice).

I now turn to the state law claims for unfair competition and trade dress infringement, which are brought under N.J. Stat. Ann. § 56:4-1 and New Jersey common law. (Compl. ¶¶43-55.) DeWulf does not appear to dispute that both claims are subject to New Jersey's six-year statute of limitations. *See Kelly v. Est. of Arnone ex rel. Ahern*, No. CIV A 08-6046(SDW), 2009 WL 2392108, at *7 (D.N.J. Aug. 3, 2009) ("The New Jersey six-year statute of limitations similarly applies to common law claims for trademark infringement and both common and state law unfair competition claims.") Unlike the laches clock, which begins to run when a plaintiff knows or should know about the existence of a provable claim, the statute of limitations begins to run upon accrual of the cause of action. *See* N.J. Stat. § 2A:14-1. A cause of action "accrues" when "all of its elements have come into existence such that an omniscient plaintiff could prove them in court." *See William A. Graham Co. v. Haughey*, 646 F.3d 138, 146 (3d Cir. 2011).

As discussed above, the complaint does not specify when Blatt began its allegedly infringing activity, and thus it is not clear on the face of the complaint when the cause of action accrued. Again, however, even assuming without deciding that I can consider the March 2016 Instagram post as evidence that Blatt was engaging in allegedly infringing conduct at that time, it is still not clear that the statute of limitations would bar DeWulf's claims.

In New Jersey, statutes of limitation are "subject to equitable constraints," one of which is the discovery rule. *Fox v. Millman*, 210 N.J. 401, 415 (2012). "The 'equitable principle of the discovery rule . . . delays accrual of a cause of action' until the injured plaintiff discovers, or should have reasonably discovered, 'a basis for an actionable claim.'" *Id.* (Quoting *Guichardo v. Rubinfeld*, 177 N.J. 45, 51 (2003)). Both the Third Circuit and the New Jersey Supreme Court have recognized that the discovery rule applies to causes of action that sound in fraud. *Cetel v. Kirwan Fin. Grp., Inc.*, 460 F.3d 494, 513 n.15 (3d Cir. 2006); *Lopez v. Swyer*, 62 N.J. 267, 274 (1973).

Whether the discovery rule applies to DeWulf's claims, and whether his claims are nevertheless barred, are questions I cannot answer at this stage.[3] The New Jersey Supreme Court has instructed that a judge must consider "all relevant facts and circumstances" in determining whether the discovery rule applies, including but not limited to "the nature of the alleged injury, the availability of witnesses and written evidence, the length of time that has elapsed since the alleged wrongdoing, whether the delay has been to any extent deliberate or intentional, [and] whether the delay may be said to have peculiarly or unusually prejudiced the defendant." *Lopez*, 62 N.J. at 275–76. The record is not sufficiently developed to justify such a determination at this time. I will therefore deny the motion for judgment on the pleadings as to Counts 2 and 3 as well.

In short, untimeliness is an affirmative defense, which a defendant must plead and prove. On a motion like this one, it must appear clearly from the face of the pleadings that the claim is untimely. Where actual and potential factual issues will affect the resolution of the timeliness question, a motion to dismiss or for judgment on the pleadings cannot be granted. I therefore deny the motions insofar as they are based on laches or the statute of limitations.

---

[3]     Although Blatt states that the discovery rule does not apply to DeWulf's state law claims, it does not cite any authority in support of this assertion. (MJOP 15.)

### III.   Conclusion

For the reasons set forth above, DeWulf's motion to strike (DE 10) is **DENIED**. The request for fees and costs is **DENIED**. Blatt's motion for judgment on the pleadings (DE 13) is also **DENIED** without prejudice to the renewal of Blatt's arguments that the claims against it are time-barred, following discovery and the sufficient development of a factual record. An appropriate order will issue.

Dated: May 2, 2023

/s/ Kevin McNulty

_____

**Kevin McNulty**
**United States District Judge**